**In re Louis Vincent MAGNIFICO, Debtor.**

**The STATE OF ARIZONA, Plaintiff,**

v.

**Louis Vincent MAGNIFICO, Defendant.**

**Bankruptcy No. B-81-2395-PHX-RGM. Adv. No. 82-532 RGM.**

United States Bankruptcy Court, D. Arizona.

July 12, 1982.

Cliff C. Wamacks, Deputy County Atty., Phoenix, Ariz., for plaintiff.

Patricia J. Finley, Phoenix, Ariz., for debtor/defendant.

OPINION AND ORDER OF DETERMINATION THAT CRIMINAL RESTITUTION IS NOT A DEBT UNDER THE BANKRUPTCY CODE AND THEREFORE NOT SUBJECT TO THE DISCHARGEABILITY PROVISIONS THEREOF AND FURTHER DENYING DEBTOR-DEFENDANT'S MOTION TO DISMISS

ROBERT G. MOOREMAN, Bankruptcy Judge.

The debtor in the instant proceeding filed a petition under the provisions of Chapter 7 of the Bankruptcy Code on October 9, 1981. This matter comes before the court in the posture of an adversary complaint for determination of dischargeability under the Bankruptcy Code with reference to an obligation for *restitution* in a state court criminal case and upon the hearing of debtor's Motion to Dismiss and the Response filed by the State of Arizona.

The legal issues before this court involve a determination of the nature and status of criminal *restitution*. The uncontested underlying facts are set forth hereinafter as the record herein.

On April 10, 1981, the debtor, Louis Vincent Magnifico, was a patron at Kriskimkeel's restaurant and bar located at Phoenix, Arizona. While in the bar, he argued with another patron and was subsequently asked by the manager to leave the premises and on starting toward the door to leave another patron also went to the door and at that time, Mr. Magnifico turned and, producing a knife, ordered him to get back inside. Thereafter, moments later, a white 1977 Ford van, driven by Mr. Magnifico, came crashing into the bar through the front wall. The vehicle proceeded into the building and crashed into the bar pinning patron Donald Raymond between the vehicle and the bar. Then the van was backed up and driven forward within the restaurant a second time. This time it struck patron, Joseph Varelli, who had come to the aid of victim Raymond. Thereafter, the van was backed up and a third time driven forward crashing against the bar. The debtor then abandoned the van, ran out of the restaurant/bar, crossed the street and secreted himself in the ladies room of a paint store where he was later arrested. Both victims, Mr. Raymond and Mr. Varelli, suffered injuries as a result of the intentional assault upon their person and have filed proofs of claim for damages in the bankruptcy proceedings.

On April 16, 1981, the debtor was indicted by the State of Arizona in case No. CR 118972, on charges of Count I: Aggravated Assault, a class three dangerous felony; Count II: Aggravated Assault, a class three, dangerous felony; and Count III: Criminal Damage, a class four felony. Thereafter, some three and one-half months prior to these bankruptcy proceedings, Mr. Magnifico entered a plea agreement for a change of pleas to Count I, as a non-dangerous offense and stipulating, in contemplation of probation, to *restitution* on all counts. Subject to this agreement, the debtor was allowed by the state court to change his plea to no contest and was found guilty of the stipulated class three, nondangerous felony. The presentence report found that Mr. Varelli had incurred medical bills in excess of $8,000, Mr. Raymond had incurred medical bills in excess of $15,000 and Kriskimkeel restaurant/bar had been damaged in excess of $10,000 in repair costs. Thus the damages were estimated in excess of $33,000 without taking into consideration the loss of restaurant business and lost wages by Varelli and Raymond. The State Superior Court suspended imposition of sentence for five years and placed Mr. Magnifico on probation. Among the court approved terms and conditions of probation defendant agreed to accept was *restitution* to the victims of his actions in the total amount of $5,500 itemized as follows: $3,000 to Mr. Varelli, $1,000 to Mr. Raymond, and $1,500 to the restaurant. This amount was ordered by the Superior Court to be paid in regular monthly payments of only $100 commencing on September 1, 1981. After making one payment, the debtor, on October 8, 1981, filed a petition in bankruptcy listing the unliquidated obligations to Mr. Varelli, Mr. Raymond and the restaurant as debts, as well as listing the "Clerk of Superior Court" for *restitution* in the criminal case in the amount of $5,400.

Thereafter, on March 16, 1982, plaintiff State of Arizona filed its complaint in this court to determine the nondischargeability of an order of restitution as a condition of probation resulting from a pre-petition criminal conviction and alternately seeking a determination that such criminal *restitution* is not a debt and that as a probationary obligation is not contemplated or perceived to be within the scope of the Bankruptcy Code. In response, the debtor/defendant filed a Motion to Dismiss on March 29, 1982, alleging untimely filing for the reason that the plaintiff missed the last day for filing complaints to determine dischargeability of debt by one month and a day and also urged during oral argument that the obligation was subject to the stay of this court under cited case law.

The court is presented with two questions:

1. Should the State's Complaint to Determine Dischargeability be dismissed for untimely filing?

2. Is criminal *restitution*, as one of the conditions of probation, a debt within the scope of the Bankruptcy Code and, if so, does it fall within one of the exceptions to discharge and therefore, nondischargeable?

The State of Arizona, in urging its position, argues that *Perez v. Campbell*, 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971) does not apply to the instant case. It states that the decision, holding Arizona's Motor Vehicle Safety Responsibility Act invalid insofar as it conflicted with the Bankruptcy Act, 11 U.S.C. § 35, was the result of finding that the sole emphasis of the Arizona Act was to provide "leverage for the collection of damages from drivers who either admit they are at fault or are adjudged negligent." *Perez, supra,* at 646, 91 S.Ct. at 1710. The State further argues that attempts by Congress to interfere via the Bankruptcy Code with a state court criminal process would be invalid as a contravention of the Tenth Amendment. In support, Supreme Court decisions are cited including *National League of Cities v. Usery*, 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976), which addresses the various aspects of the constitutionality of the states' reserved police powers. The State also urges that an order of criminal *restitution* as a condition of probation is not a debt within the scope of the Bankruptcy Code and relies principally upon *People v. Mosesson*, 356 N.Y.S.2d 483, 78 Misc.2d 217 (1974); *People v. Topping Bros.*, 359 N.Y.S.2d 985, 79 Misc.2d 260 (1974); *People v. Washburn*, 97 Cal.App.3d 621, 158 Cal.Rptr. 822 (1979); and also relied on *In re Ralph Button*, 8 B.R. 692 (Bkrtcy.W.D.N.Y.1981) in the State's supplemental response.

The debtor, in support of his position on the merits, argues case law urging that *restitution* resulting from criminal proceedings is a debt and dischargeable in bankruptcy and should be stayed by this court. Cited to the court at oral argument were the cases of *Barnett v. K-Mart, et al. (In re Barnett)*, 15 B.R. 504 (Bkrtcy.D.Kan.1981), *Whitaker v. Locker (In re Whitaker)*, 16 B.R. 917 (Bkrtcy.M.D.Tenn.1982); *Reid v. Young (In re Reid)*, 9 B.R. 830 (Bkrtcy.M.D.

Ala.1981); and *Kaping v. State (In re Kaping)*, 13 B.R. 621 (Bkrtcy.D.Or.1981). This court holds that these cases do not apply to the fact situation before this court and distinguish these cases below.

The principal issue herein, the dischargeability of or effect of criminal *restitution*, was recently before the Bankruptcy Court in the Western District of New York, *In re Ralph Button, supra*. The New York court determined that criminal *restitution* is not a debtor/creditor relationship and stated at page 694:

Under the new Bankruptcy Code, § 101(11) says the term "debt" means liability on a claim. "Claim," pursuant to § 101(4) means right to payment. "Creditor," according to § 101(9) generally means an entity that has a claim against the debtor that arose before filing. From these definitions, it does not appear that restitution could be considered a debt nor that a victim could be considered a creditor. With restitution, the victim has no right to payment. It is the criminal court which sets the restitution amount and if it is not paid the victim cannot proceed against the debtor to enforce payment, but instead the probation officer must report the event of nonpayment to the court which in turn determines if a violation of probation has occurred.

Two cases relied on in *Button, supra* from New York, *People v. Topping Bros., supra*, and *People v. Mosesson, supra*, and a California case, *People v. Washburn, supra*, expressly held that *restitution* was not a debt and did not create a debtor/creditor relationship.

Legislative history also serves to guide the result as to the relationship between the debtor and the State in its criminal proceedings:

The bankruptcy laws are not a haven for criminal offenders, but are designed to give relief from financial over-extension. Thus, criminal actions and proceedings may proceed in spite of bankruptcy.

House Report No. 95–595, 95th Cong., 1st Sess. (1977); Senate Report No. 95–989,

95th Cong., 2nd Sess. (1978) 51–2, 5 U.S. Code Cong. & Admin.News, 5787, 5837 (1978).

A research of the law indicates that the purposes stated for probationary *restitution* in criminal cases vary from case to case. The court in *Mosesson, supra,* at 484, indicates that probationary restitution is intended as a means to insure the defendant will lead a law-abiding life thereafter. The *Washburn* court, *supra,* at 825, states that, among other purposes, it was meant to rehabilitate, make a criminal understand that he had harmed individual human beings, as well as society in the abstract, and it was not a part of a civil debtor-creditor relationship. Some courts, as urged by the debtor, under different factual situations, however, have taken apparently different views. See *In re Barnett, supra,* and *In re Whitaker, supra,* involving State "bad check" laws. *In re Reid, supra,* involves a Chapter 13 debtor whose plan proposed 100% payout to the very creditors who were urging the criminal proceedings to collect payment. *In re Kaping, supra,* the court stayed criminal nonsupport proceedings after the underlying debt for non-support proceedings had been discharged in bankruptcy pursuant to 11 U.S.C. § 523(a)(5)(A). Those courts, though each noting the reluctance of the Bankruptcy Court to interfere in any way with the enforcement of criminal law, looked to the motivation involved in the criminal charges when litigated to collect the debt. The decisions reflect that the true purpose for the *restitution* in each case was to make the victim whole after discharge of an underlying, pre-existing debt; therefore, the criminal proceedings involving *restitution* therein was properly stayed by the Bankruptcy Code under such limited circumstances explained therein.

The facts surrounding the criminal *restitution* in this case are part and parcel of the agreement for probation made between the defendant Magnifico and the State of Arizona. It is one of thirteen conditions for probation flowing from the debtor/defendant's conviction of a Class 3 felony. The nominal amount of total *restitution* under the circumstances fixed by the state court of $5,500 is not the amount of damages sustained by the claimants injured, nor is such amount due and owing directly to them. It is an obligation made directly to the State of Arizona, acting on behalf of its citizens for their benefit, and to further impress the debtor of his criminal responsibility for his criminal acts.

This court therefore finds and determines that the underlying purpose of probationary criminal *restitution* under the facts of the case is not one of simple debt servicing for victims but is in fact rehabilitative in nature. There is no pre-petition, pre-existing debtor-creditor relationship between the State and the convicted felon. Compare *U. S. v. Carson,* 669 F.2d 216 (5th Cir. 1982).

Accordingly, it is determined that the criminal *restitution* involved herein as a condition of probation in this case is not a debt contemplated by the Bankruptcy Code and such probationary obligation is not contemplated or perceived to be within the scope of debts dischargeable here and therefore not subject to the stay or discharge provisions of the Bankruptcy Court. Concerning the issue of untimeliness of the State's Complaint to Determine Dischargeability, filed one month and one day after the last day fixed therefor, for the purposes of this opinion, the court finds the complaint is timely filed,

AND IT IS FURTHER ORDERED denying the debtor/defendant's Motion to Dismiss, this court having concluded probationary *restitution* is not a debt and therefore the determination sought by the State of Arizona is therefore not subject to time restrictions of the discharge provisions of the Bankruptcy Code.

Pursuant to F.R.Civ.P. 52, as adopted by Rule 752 of the Rules of Bankruptcy Procedure, this opinion and order shall constitute findings of fact and conclusions of law herein.