In re Louis Pasquale PELLEGRINO and Florence Ann Pellegrino, Debtors.

Louis Pasquale PELLEGRINO and Florence Ann Pellegrino, Plaintiffs,

v.

DIVISION OF CRIMINAL JUSTICE, Chief State's Attorney for the J.D. of New Haven, Judicial Department; Director, Office of Adult Probation; Commissioner, Department of Income Maintenance; Commissioner of Administrative Services, Bureau of Collection Services, Defendants.

Bankruptcy No. 5–83–00361.
Adv. No. 5–83–0554.

United States Bankruptcy Court,
D. Connecticut.

July 26, 1984.

Francis X. Dineen, Joanne S. Faulkner, New Haven Legal Assistance Ass'n, Inc., New Haven, Conn., for plaintiffs.

Edward F. Reynolds, Asst. Atty. Gen., State of Conn., Hartford, Conn., for defendants Com'r, Dept. of Income Maintenance and Com'r of Administrative Services, Bureau of Collection Services.

Carl Schuman, Asst. State's Atty., Wallingford, Conn., for defendants Div. of Criminal Justice and Director, Office of Adult Probation.

## MEMORANDUM AND PROPOSED ORDER

ALAN H.W. SHIFF, Bankruptcy Judge.

The plaintiffs, debtors, brought this action to determine, *inter alia*, the dischargeability of an order of restitution entered by the Superior Court of the State of Connecticut for the Judicial District of New Haven as a condition of probation in connection with a larceny conviction of the debtor Florence Pellegrino.

## I.

### BACKGROUND

On June 30, 1982, Florence Pellegrino was arrested for larceny in the second degree for fraudulently obtaining food stamps in the amount of $15,960.00 in violation of Connecticut General Statutes §§ 17–83i and 53a–123. Pellegrino pleaded guilty to the charges, and on October 29, 1982,

she was sentenced to a two year prison term.[1] Execution of the prison term was suspended, and Pellegrino was placed on probation for five years on the condition that she make restitution in the amount of $15,960.00 to the State of Connecticut. At the sentencing, Pellegrino and her husband, Louis, pleaded for probation as an alternative to incarceration and suggested that restitution be paid out of Louis Pellegrino's wages. A wage execution was thereafter ordered in the amount of $40.00 per week. Because the parties have treated the wage execution as a part of the so-called restitution debt, this court will adopt that view.

On April 14, 1983, the plaintiffs filed a voluntary joint petition in this court under Chapter 7 of the Bankruptcy Code. Each of the plaintiffs listed the defendants State of Connecticut Department of Income Maintenance, Bureau of Collection Services and Office of Adult Probation as unsecured creditors on their Schedule A–3.[2] The plaintiffs obtained a discharge by the August 26, 1983 order of this court.

On February 7, 1984, the plaintiffs filed an amended complaint, seeking, in the First Count, a determination that the restitution order of the state court is a dischargeable debt which had been discharged by the order of this court. The Second Count alleges that the defendants violated the automatic stay provided by Code § 362(a) when they "continued to enforce the wage execution and collect amounts from Mr. Pellegrino's pay pursuant to the restitution order."[3] The plaintiffs further allege that the continued acceptance of money from Louis Pellegrino's wages "and any effort defendants may make to enforce the restitution order is in violation of this Court's

---

1. *State of Connecticut v. Florence Pellegrino* Docket No. CR6–207900.

2. It should be noted that although paragraph 4 of each count of the plaintiffs' Amended Complaint alleges that "a debt to the State of Connecticut Department of Income Maintenance, the Bureau of Collection Services, and the Adult Probation Department" was "duly scheduled", Schedule A–3 of the plaintiffs' petition lists those three creditors and an "AFDC" claim, estimated at $65,000.00 for the years 1969–1983.

That was the only claim attributed to the defendants in their schedules. The "restitution debt" of $15,960.00, which is the subject of this proceeding, was not listed. Since, however, the defendants received notice of this Chapter 7 case as scheduled unsecured creditors, the "restitution debt" was not excluded from discharge under Code § 523(a)(3).

3. Amended Complaint ¶ 11.

order discharging the debtors and of 11 U.S.C. §§ 524 and 525."[4] The plaintiffs allege in the Third Count of their Amended Complaint that the actions of the defendants "have deprived and are depriving the plaintiffs of their civil rights, privileges, or immunities under color of state law" in violation of the Civil Rights Act, 42 U.S.C. § 1983.[5]

■ The plaintiffs seek the following relief from this court: [6]

1. an order declaring that the larceny debt[7], for which Pellegrino was convicted, and the "restitution debt", ordered by the state court, are dischargeable and have been discharged;

2. an order enjoining the defendants from taking any steps to obtain payment of the restitution or otherwise enforcing the criminal judgment;

3. an order enjoining the defendants from continuing the wage execution on Louis Pellegrino's wages;

4. an order assessing attorney's fees and costs against the defendants pursuant to this court's equitable powers and 42 U.S.C. § 1988, payable to New Haven Legal Assistance Association;

5. appropriate orders for contempt and violation of the plaintiff's civil rights; and

6. such other and further relief as this court deems just and fair.

## II.

## DISCUSSION

## A.

### IS RESTITUTION A DEBT?

Bankruptcy Code § 101(11) provides that the word "debt" means "liability on a claim." "Claim" is defined in § 101(4) as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." A "creditor," under § 101(9) is an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor."

■ Under Connecticut's penal code, restitution is one of nine conditions of probation enumerated in Conn. Gen. Stat. § 53a–30. Criminal defendants ordered to make restitution by the court send their payments to the Connecticut Office of Adult Probation which is responsible for monitoring compliance with the court's order of restitution. Conn.Gen.Stat. § 53a–30(b). The crime victim receives payments from the Office of Adult Probation. Under the penal code, a victim cannot enforce a court's order of restitution if the criminal defendant fails to make payments to the Office of Adult Probation. The state court may, however, issue a warrant for the arrest of the criminal defendant for violation of a condition of probation. Conn.Gen.Stat. § 53a–32. Since a crime victim has no "right to payment," restitution is not a "debt" under Bankruptcy Code § 101(11). *Accord, In re Johnson*, 32 B.R. 614 (Bankr. D.Col.1983) (applying Colorado law); *In re Magnifico*, 21 B.R. 800, 9 B.C.D. 670 (Bankr.D.Ariz.1982) (applying Arizona law); *In re Button*, 8 B.R. 692, 7 B.C.D. 307 (Bankr.W.D.N.Y.1981) (applying New York law). *Compare In re Newton*, 15 B.R. 708, 8 B.C.D. 522 (Bankr.N.D.Ga.1981) *aff'd,*

---

4. Amended Complaint ¶ 12.

5. Amended Complaint ¶ 13.

6. Amended Complaint p. 4.

7. Since the defendants failed to file a complaint to determine the dischargeability of the larceny debt, that debt was discharged under Code § 523(c) prior to the commencement of this action. Therefore the plaintiffs' claim for relief in the form of an order declaring that the larceny debt was discharged, when it has already been discharged by operation of law, will not be considered in this decision, and to the extent that the plaintiffs' complaint may be read to include a claim for attorney's fees and other relief in connection with the larceny debt, those claims will likewise be excluded from consideration in this decision. There was no evidence that any of the defendants asserted a claim or attempted to collect the larceny debt at any time.

No. C81–2170A (N.D.Ga. May 24, 1982). (where the bankruptcy court held that an order of restitution is a debt in Georgia where state law provides that "a restitution order shall be enforceable as a civil judgment by execution.")

Furthermore, the relationship in this proceeding between the criminal defendant and her victim lacks other typical attributes of a debtor-creditor relationship. Unlike an obligation which arises out of a contractual, statutory or common law duty, here the obligation is rooted in the traditional responsibility of a state to protect its citizens by enforcing its criminal statutes and to rehabilitate an offender by imposing a criminal sanction intended for that purpose.

As noted, Pellegrino was prosecuted, convicted and sentenced to two years in prison. Acting under the authority of Conn.Gen.Stat. § 53a–28, the state court suspended Pellegrino's prison term and placed her on probation. Using its wide discretion in setting conditions of probation, *State v. Pilch*, 35 Conn.Supp. 536, 539, 394 A.2d 1364 (1977), the court ordered Pellegrino to make restitution to the State of Connecticut. In ordering restitution under Conn.Gen.Stat. § 53a–30(a)(4), the court fixed the amount she had to pay and the manner of payment. Clearly the plaintiff's payments to the Office of Adult Probation are not a debtor's payments to a creditor. The obligation here arose from a court ordered sanction following a criminal conviction. The fact that the victim is an incidental beneficiary of that process does not alter the basic relationship between Pellegrino and the State.

Other courts have similarly held that a debtor's obligation to make restitution as a condition of probation is not a debt within the meaning of the Bankruptcy Code. *See In re Johnson, supra; In re Magnifico,*

supra; *In re Button, supra.*[8] But see *In re Brown,* 11 B.C.D. 1048, 39 B.R. 820 (Bankr. M.D. Tenn.1984), *appeal docketed,* No. 384–0585 (M.D. Tenn. May 22, 1984).

In *Button,* the debtor pleaded guilty to petty larceny, was placed on probation, and ordered to make restitution to the victim. As in this case, the debtor filed a Chapter 7 petition and listed his victim as a creditor. When the debtor stopped making restitution payments, he was charged with violation of probation which prompted him to seek a bankruptcy court order enjoining enforcement of the state court order of restitution.

The *Button* Court held that restitution ordered as a condition of probation, pursuant to § 65.10(2) of the Penal Law of the State of New York,[9] was not a debt and the victim was not a creditor. *Button, supra,* 8 B.R. at 694. As the *Button* court explained,

> With restitution, the victim has no right to payment. It is the criminal court which sets the restitution amount and if it is not paid the victim cannot proceed against the debtor to enforce payment, but instead the probation officer must report the event of nonpayment to the court which in turn determines if a violation of probation has occurred.

*Id.*

The court in *In re Magnifico, supra,* 21 B.R. 800, likewise held that an obligation to pay restitution "is not a debt contemplated by the Bankruptcy Code." *Id.* at 803. The *Magnifico* court described restitution as "an obligation made directly to the State of Arizona, acting on behalf of its citizens for their benefit, and to further impress [upon] the debtor ... his criminal responsibility for his criminal acts." *Id.*

---

**8.** Decisions applying the Bankruptcy Act of 1898 also stand for this proposition. *See People v. Washburn,* 97 Cal. App. 3d 621, 158 Cal.Rptr. 822 (1979); *People v. Mosesson,* 78 Misc.2d 217, 356 N.Y.S.2d 483 (Sup.Ct., N.Y.Co., 1974).

**9.** Section 65.10 of the New York Penal Law, like Conn. Gen. Stat. § 53a–30, establishes conditions of probation which include restitution.

The restitution provisions in these two statutes are virtually identical and form a part of a general statute intended in New York "to insure that the defendant will lead a law-abiding life or to assist him to do so," and in Connecticut to provide "conditions reasonably related to [the offender's] rehabilitation.

This court is aware that the bankruptcy court in *In re Brown, supra,* 11 B.C.D. 1048, 39 B.R. 820, recently held that restitution is a debt for purposes of the Bankruptcy Code. In so holding, the *Brown* court stated:

If the right of payment and the liability in a criminal court order of restitution were intended to be outside of the realm of debt for bankruptcy purposes, then how simple it would have been for Congress to include appropriate language in the Bankruptcy Code.

*Id.* at 1049–1050, 39 B.R. 820.

 This court acknowledges that the Bankruptcy Code's definition of "debt" contains no express exception for obligations arising out of state criminal proceedings. However, such an exception may be found in the long-standing tradition of restraint by federal courts from interference with traditional functions of state governments. *See Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971); *Perez v. Ledesma,* 401 U.S. 82, 91 S.Ct. 674, 27 L.Ed.2d 701 (1971); *In re Davis,* 691 F.2d 176 (3d Cir.1982). Bankruptcy laws are no exception, particularly where criminal proceedings are involved. *See Barnette v. Evans,* 673 F.2d 1250 (11th Cir.1982); *In re Wilson,* 30 B.R. 91 (Bankr. E.D.Tenn.1983); *In re Richardello,* 28 B.R. 344, 10 B.C.D. 743 (Bankr. D. Mass.1983). As the legislative history of Code § 362(b)(1) states,

The bankruptcy laws are not a haven for criminal offenders, but are designed to give relief from financial over-extension. Thus, criminal actions and proceedings may proceed in spite of bankruptcy.

House Report No. 595, 95th Cong., 1st Sess. 342, *reprinted in* 1978 U.S. Code Cong. & Ad. News 5963, 6299. *See also* S.Rep. No. 989, 95th Cong., 2nd Sess. 51, *reprinted in* 1978 U.S. Code. Cong. & Ad. News 5787, 5837.

With this congressional policy in mind, it would defy both logic and reason to allow a convicted person, who has been ordered to make restitution to his victim in lieu of incarceration, to use the Bankruptcy Code to escape the consequences of his crime. The definition of debt must therefore be read in the context of that policy in order to avoid that anomalous result.

The question then is does the fact that a state agency was the victim of a crime alter the conclusion that restitution is not a debt within the meaning of Code § 101(11)? While several courts have considered restitution in the context of a private victim, *In re Brown, supra; In re Johnson, supra; In re Magnifico, supra; In re Button, supra,* this appears to be the first court to consider the issue where a state is both the victim of the crime and the recipient of the restitution.

Although several parts of the Connecticut governmental unit were involved in the prosecution, collection, deposit and enforcement process necessitated by Pellegrino's criminal conduct, each must be considered as a separate entity in analyzing whether a debtor-creditor relationship was established by the state court order of restitution. Therefore the mere fact that one state agency was the actual victim of the crime and another part of the same governmental unit prosecuted Pellegrino and may enforce the order of restitution is an insufficient basis to create a debtor-creditor relationship between Pellegrino and the State. Had Pellegrino committed a crime against a private citizen, that victim, as previously observed, could not enforce the restitution order. Under those circumstances there would be no debtor-creditor relationship and no "debt" as defined in Code § 101(11) to be discharged. It is accordingly concluded that the mere fact that the State of Connecticut was the victim of Pellegrino's crime is irrelevant to the issues presented here. As Assistant State's Attorney Schuman correctly argued, "The people of the state [cannot] have fewer rights than a private victim." [10]

 In view of the foregoing, it is concluded that the state court's order that

10. Tr. May 18, 1984, at 24.

Pellegrino make restitution did not create a debt under the Bankruptcy Code. Accordingly, that obligation was unaffected by this court's August 26, 1983 discharge order.

Even assuming *arguendo* that the order of restitution is a "debt" within the purview of the Bankruptcy Code, the post petition collection of that debt by the defendants would not violate the automatic stay provided by Code § 362(a). Moreover, that "debt" would be excepted from discharge pursuant to Code § 523(a)(7).

## B.

### AUTOMATIC STAY

Although the plaintiffs primarily seek a determination that the order of restitution is a dischargeable debt, their complaint also alleges that the defendants' post petition enforcement of the wage execution was a violation of the automatic stay provided by Code § 362(a).[11] The plaintiffs' contention is without merit. The wage execution on Louis Pellegrino's wages was an integral part of the sentence which followed the state's prosecution of his wife.

Code § 362(b)(1) provides in relevant part:

> (b) The filing of a petition ... does not operate as a stay—
>> (1) under subsection (a) of this section, of the commencement or continuation of a criminal action or proceeding against the debtor.

The literal language of that provision together with its legislative history as an expression of congressional policy against bankruptcy court interference with criminal proceedings, recounted *supra* at p. 134, compels the conclusion that neither the restitution nor the wage execution, ordered as a means of carrying it out, were stayed by the filing of the plaintiffs' bankruptcy petition. *Accord, In re Newton,* 15 B.R. at 710 (Bankr.N.D.Ga.1981) *aff'd,* No. C81–2170A (N.D.Ga. May 24, 1982). To view the wage execution and its enforcement throughout the five-year probationary period as separate from the conviction and sentencing of Pellegrino would distort reality.

The enforcement of the wage execution may also be viewed as the "continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power". As such, that activity is excepted from the automatic stay by § 362(b)(4). In addition, the enforcement of the wage execution might arguably be excepted from the automatic stay under § 362(b)(5)[12] in that the wage execution was ordered to implement the state court judgment of conviction, a nonmonetary judgment, "obtained in an action or proceeding by a governmental unit to enforce such governmental unit's police or regulating power." The § 362(b)(4) and § 362(b)(5) exceptions to the automatic stay should be construed broadly "[w]here important state law or general equitable prin-

---

**11.** Although the plaintiffs do not designate which portions of Code § 362(a) they rely on, the subsections which appear to be consistent with their allegations are §§ 362(a)(1), 362(a)(2) and 362(a)(6) which provide in pertinent part:

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title ... operates as a stay, applicable to all entities, of—

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

(2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;

(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title.

**12.** Code § 362(b)(5) provides in relevant part as follows:

(b) The filing of a petition under section 301 ... of this title, ... does not operate as a stay—

(5) under subsection (a)(2) of this section, of the enforcement of a judgment, other than a money judgment, obtained in an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power.

ciples protect some public interest." *Penn. Terra Ltd. v. Dept. of Environ. Resources,* 733 F.2d 267 (3d Cir. 1984).

■ It is therefore concluded that the enforcement of the wage execution ordered by the state court to implement its order of restitution was excepted from the automatic stay, and any post petition action by the defendants in that regard did not constitute contempt of this court's order.

## C.

## DISCHARGEABILITY

### CODE § 523(a)(7)

■ As this court observed in a different context in *In re Harron,* 31 B.R. 466, 467–468 (Bankr.D.Conn.1983)

The rich tradition of justice and equity which has characterized our approach to the regulation of society through law has long recognized that relief must be provided to the honest debtor who cannot endure the burden of financial distress. The current Bankruptcy Code and its predecessors provide that relief to individual debtors. Under the Code a two fold objective is sought. A debtor who files under Chapter 7 is relieved from his dischargeable debts and is given a fresh start in the form of allowable exemptions while the members of each class of his creditors are assured equal treatment in the distribution of his remaining assets. That balance, however, rests, *inter alia,* upon the premise that the petitioning debtor is honest and is therefore entitled

to such relief, and when it can be demonstrated otherwise, the discharge is denied.

Code § 523(a) provides a statutory basis for challenging the dischargeability of certain debts, including debts for a fine or penalty. Thus, as noted, *supra,* even assuming *arguendo* that the state court order of restitution in this case is a debt within the purview of the Bankruptcy Code, the result in this proceeding would not change because such a debt would be expected from discharge under Code § 523(a)(7). Code § 523(a)(7) provides in pertinent part:

(a) A discharge under section 727, ... of this title does not discharge an individual debtor from any debt—

. . . .

(7) to the extent such debt is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss ...

The plaintiffs contend that the § 523(a)(7) exception to dischargeability does not apply here because the restitution order was established by the state court to provide "compensation for actual pecuniary loss". There is no merit to that contention.

■ An analysis of Connecticut's probation statute, Conn.Gen.Stat. § 53a–30(a),[13] reveals an enumeration of eight specific kinds of conditional release and a ninth nonspecific method, consisting of "any other conditions reasonably related to [the offender's] rehabilitation." It is therefore

---

13. Conn.Gen.Stat. § 53a–30(a) provides in pertinent part:

When imposing sentence of probation or conditional discharge, the court may, as a condition of the sentence, order that the defendant: (1) Work faithfully at a suitable employment or faithfully pursue a course of study or of vocational training that will equip him for suitable employment; (2) undergo medical or psychiatric treatment and remain in a specified institution, when required for that purpose; (3) support his dependents and meet other family obligations; (4) make restitution of the fruits of his offense or make restitution, in an amount he can afford to pay or provide in a suitable manner, for the loss or damage caused thereby and

the court may fix the amount thereof and the manner of performance; (5) if a minor, (A) reside with his parents or in a suitable foster home, (B) attend school, and (C) contribute to his own support in any home or foster home; (6) post a bond or other security for the performance of any or all conditions imposed; (7) refrain from violating any criminal law of the United States, this state or any other state; (8) reside in a residential community center or halfway house approved by the commissioner of correction, and contribute to the cost incident to such residence; (9) *satisfy any other conditions reasonably related to his rehabilitation.* (emphasis added).

apparent that the focus of Connecticut's probation statute is upon the offender and that the purpose of probation in Connecticut is rehabilitation.

The United States Supreme Court has defined probation as "an individualized program offering a[n] ... unhardened offender an opportunity to rehabilitate himself without institutional confinement ...." *Roberts v. United States*, 320 U.S. 264, 272, 64 S.Ct. 113, 117, 88 L.Ed. 41 (1943). The Connecticut courts have likewise long held:

> "[Probation's] aim is reformatory and not punitive. It is to bring one who has fallen into evil ways under oversight and influences which may lead him to a better living. The end sought is the good of the individual wrongdoer, and not his punishment.

*Belden v. Hugo*, 88 Conn. 500, 504, 91 A. 369, 370 (1914).

 As one of the eight specific statutory options available to the state court imposing a sentence of probation, restitution is intended to promote the rehabilitation of the offender, not to compensate the victim. The rehabilitative nature of restitution, ordered as a condition or probation, was recognized by the Fifth Circuit Court of Appeals in *United States v. Carson*, 669 F.2d 216 (5th Cir.1982). After receiving a discharge in bankruptcy, Carson was convicted under a federal law and ordered by the district court to make restitution to the defrauded bank. The defendant argued that because his debt to the bank had been discharged in bankruptcy, the district court abused its discretion by making restitution a condition of probation. The court rejected this argument and held that a federal court may order restitution as a condition of probation even though the debt which resulted in the conviction was discharged in bankruptcy. In so holding, the court stated:

> If the principal aim of the probation condition were to make the bank whole, this

argument might have some appeal. In fact, though, while recompense to the victim is a usually laudable consequence of restitution, the focus of any probation regimen is on the offender. The order of probation is "an authorized mode of mild and ambulatory punishment ... intended as a reforming discipline." *Korematsu v. United States*, 319 U.S. 432, 435, 63 S.Ct. 1124, 1126, 87 L.Ed. 1497 (1943), *quoting Cooper v. United States*, 91 F.2d 195, 199 (5th Cir.1937).

*Id.* at 217.

In support of their claim that restitution was ordered to provide "compensation for actual pecuniary loss," the plaintiffs relied upon the fact that the restitution ordered was the precise amount of the victim's loss.[14] The plaintiff's reliance is misplaced. The amount of restitution has no bearing on its purpose.

The state court is given discretion under Conn.Gen.Stat. § 53a–30(a)(4) to order an offender to "make restitution of the fruits of his offense or make restitution, in an amount he can afford to pay, or provide in a suitable manner, for the loss or damage caused thereby". The state court could therefore have set the amount of restitution at the amount of the victim's loss or less, depending upon the offender's ability to pay. Moreover, Conn.Gen.Stat. § 53a–30(c) authorizes the court to modify or enlarge the conditions of probation for good cause shown during the period of probation. That statutory scheme reinforces the conclusion that the focus of restitution, as with the other methods of conditional release, is upon the offender and not on the victim, and that restitution is part of the criminal penalty rather than compensation for a victim's actual loss.

In *In re Cox*, 33 B.R. 657, 11 B.C.D. 88 (Bankr.M.D.Ga.1983) the court considered the dischargeability, under Code § 523(a)(7), of a debtor's obligation to pay the costs of prosecution ordered by the United States District Court. In finding

---

**14.** Although the state court ordered restitution in the amount of the victim's $15,960.00 loss, the manner of payment established by the court ($1,000 initially and $40 per week for five years) would result in the payment of less than that amount.

that the costs were nondischargeable under § 523(a)(7), the bankruptcy court stated that "the obligation to pay the costs of prosecution was imposed as a penalty to punish Defendant for his violation of the criminal laws, rather than to compensate Plaintiff for actual pecuniary loss." *Id.* at 662, 11 B.C.D. at 91.

 This proceeding, like *Cox*, is distinguishable from cases where a creditor or a prosecuting attorney initiates a criminal action to collect an underlying debt. *See, e.g., In re Alan I.W. Frank Corp.*, 19 B.R. 41 (Bankr.E.D.Pa.1982); *In re Strassmann*, 18 B.R. 346 (Bankr.E.D.Pa.1982); *In re Whitaker*, 16 B.R. 917 (Bankr.M.D. Tenn.1982); *In re Taylor*, 16 B.R. 323 (Bankr.D.Md.1981). No persuasive evidence was offered to demonstrate that the state prosecuted Pellegrino for any reason other than to obtain a conviction for the violation of the state's penal code. As the court stated in *In re Holder*, 26 B.R. 789, 791 (Bankr.M.D.Tenn.1982):

> [A] federal court's power to interfere with state criminal proceedings is narrowly circumscribed and such interference is only justified when the evidence clearly and convincingly reflects that the criminal proceeding is primarily intended to collect a civil debt in contravention of either the automatic stay or discharge provisions of the Bankruptcy Code.

The facts here are also distinguishable from instances where a state agency attempts to enforce a statute directed at a debtor's financial obligations rather than the state's health and public safety concerns such as, for example, where a state agency attempts to enforce its motor vehicle financial responsibility law against a Chapter 7 debtor. *See In re Sampson*, 17 B.R. 528, 8 B.C.D. 992 (Bankr.D.Conn. 1982).

 As earlier observed, federal courts should use restraint when their decisions might interfere with traditional state functions. There is no more appropriate application of that policy than in the area of criminal law where states have a primary responsibility to promote the safety and welfare of their citizens through the enforcement of their criminal statutes. This policy, which extends to noninterference with state criminal proceedings, is endorsed by the Bankruptcy Reform Act of 1978 and its legislative history and, in this proceeding supports the conclusion that the restitution order, as part of a criminal action against Pellegrino, is excepted from discharge under Code § 523(a)(7). It would be incongruous that the drafters of the Bankruptcy Code, mindful of the wisdom of nonintereference with criminal prosecutions, would limit, under Code § 362(b)(1), the scope of the automatic stay to allow the continuation of criminal proceedings against a debtor and then provide for the discharge of restitution, one of the sanctions made available to the criminal court by the state legislature.

 Having considered the pleadings, the relevant evidence, the arguments of counsel and congressional intent, this court of equity will not read the Bankruptcy Code as permitting Pellegrino to escape the consequences of her crime. Justice is the end result when the rule of law is interpreted with common sense, reason and simple fairness. Here a convicted felon and her husband, who wished to save her from incarceration, pleaded for lieniency in the state court. She was spared the penalty of incarceration on the condition that restitution would be made. The plaintiffs now come to this court to repudiate that obligation, claiming that the Bankruptcy Code provides that relief. It does not. It is a distortion of bankruptcy law and policy to view Code § 523(a)(7) as a shield to restitution obligations in the context of this proceeding. As the court in *In re C.H. Stuart, Inc.*, 12 B.R. 85, 86 (Bankr.W.D.N. Y.1981) noted, "A thief cannot escape criminal sanctions by filing bankruptcy and listing his victim on his schedule of unsecured creditors." The bankruptcy laws were not enacted and must not be interpreted to provide a refuge to criminals. The plaintiffs bargained in state court for Pellegrino's freedom. This court will not permit

them to escape the full obligations of that bargain.

## III.

## ORDER

For the foregoing reasons, the obligations created by the October 29, 1982 state court restitution order are not discharged, therefore the plaintiffs are not entitled to the injunctive relief, damages, costs, attorney's fees and the other relief claimed in their amended complaint and judgment may enter accordingly.

DALY, Chief Judge.

It is SO ORDERED.