**In re Carlene May MEAD, Debtor.**

**Carlene May MEAD, Plaintiff,**

**v.**

**DIRECTOR, OFFICE OF ADULT PROBATION, Austin J. McGuigan, Chief State's Attorney, Division of Criminal Justice, Judicial Department, Defendants.**

**Bankruptcy No. 5–83–00880.
Adv. No. 5–84–0021.**

United States Bankruptcy Court,
D. Connecticut.

Sept. 7, 1984.

Francis X. Dineen, Joanne S. Faulkner, New Haven Legal Assistance Ass'n, Inc., New Haven, Conn., for plaintiff.

Carl J. Schuman, Asst. State's Atty., Wallingford, Conn., for defendants Director, Office of Adult Probation and Austin J. McGuigan, Chief State's Atty., Div. of Crim. Justice, Judicial Dept.

## MEMORANDUM AND PROPOSED ORDER

ALAN H.W. SHIFF, Bankruptcy Judge.

The plaintiff-debtor, Carlene May Mead, brought this action to determine, *inter alia,* the dischargeability of an order of restitution entered by the Superior Court of the State of Connecticut for the Judicial District of New Haven as a condition of probation in connection with her conviction for issuing bad checks.

### BACKGROUND

On April 26, 1983, Mead was convicted on four counts of issuing bad checks in violation of Connecticut General Statute § 53a–128 and was sentenced to a 90 day prison term,[1] the execution of which was suspended, pursuant to Conn.Gen.Stat. § 53a–28, and she was on probation for two years on the condition that she make restitution in the amount of $640.00 to Stop and Shop Companies, Inc., the payee of the bad checks. On October 12, 1983, Mead filed a petition in this court under Chapter 7 of the Bankruptcy Code and listed on Schedule A–3 a restitution claim of the defendant Office of Adult Probation in the amount of $440.00.[2] On January 31, 1984, the defendant Office of Adult Probation issued a "Warning Notice of Violation of Probation" to Mead for "Failure to pay restitution", and on February 6, 1984, Mead filed a complaint which is the subject of this proceeding, seeking (1) a determination that the "restitution debt" is dischargeable; (2) "an order enjoining the defendants from taking any steps, whether directly or indirectly, from obtaining [sic] payment of the restitution"; and (3) "such other and further relief as this Court deems just and equitable".[3] On June 19, 1984, Mead obtained a discharge by the order of this court.

### DISCUSSION

#### (A)

#### IS RESTITUTION A DEBT?

█ This proceeding again brings before the court the issue of the dischargeability of restitution ordered by a state court as a condition of probation following a criminal conviction. This court recently considered that issue in *In re Pellegrino,* 42 B.R. 129 (Bankr.D.Conn. 1984) (appeal pending). In *Pellegrino,* this court concluded that restitution is not a debt as defined in Code § 101(11)[4] but rather an obligation imposed by a sentencing court as a part of the criminal justice process following the debtor's larceny conviction.

This case differs from *Pellegrino* by the insignificant fact that Mead was convicted for issuing bad checks and not for larceny, and as in *Pellegrino,* this court concludes that restitution is not a debt under the

---

1. *State of Connecticut v. Carlene Mead,* Docket No. CR8–58539.

2. Mead had paid $200.00 of the restitution prior to filing the Chapter 7 petition.

3. Complaint p. 2.

4. Bankruptcy Code § 101(11) states that "debt" "means liability on a claim." The word "claim" is defined in Code § 101(4) in relevant part as "a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured."

Bankruptcy Code. The mere fact that a victim of criminal activity is an incidental beneficiary of an order of restitution imposed upon a criminal defendant as a condition of probation, does not create a debtor-creditor relationship between the criminal and his victim. This court observed in *Pellegrino:*

> Under Connecticut's penal code, restitution is one of nine conditions of probation enumerated in Conn.Gen.Stat. § 53a–30. Criminal defendants ordered to make restitution by the court send their payments to the Connecticut Office of Adult Probation which is responsible for monitoring compliance with the court's order of restitution. Conn.Gen. Stat. § 53a–30(b). The crime victim receives payments from the Office of Adult Probation. Under the penal code, a victim cannot enforce a court's order of restitution if the criminal defendant fails to make payments to the Office of Adult Probation. The state court may, however, issue a warrant for the arrest of the criminal defendant for violation of a condition of probation. Conn.Gen.Stat. § 53a–32. Since a crime victim has no "right to payment," restitution is not a "debt" under Bankruptcy Code § 101(11). *Accord, In re Johnson,* 32 B.R. 614 (Bankr.D.Col.1983) (applying Colorado law); *In re Magnifico,* 21 B.R. 800, 9 B.C.D. 670 (Bankr.D.Ariz.1982) (applying Arizona law); *In re Button,* 8 B.R. 692, 7 B.C.D. 307 (Bankr.W.D.N.Y. 1981) (applying New York law). *Compare In re Newton,* 15 B.R. 708, 8 B.C.D. 522 (Bankr.N.D.Ga.1981) *aff'd,* No. C81–2170A (N.D.Ga. May 24, 1982). (where the bankruptcy court held that an order of restitution is a debt in Georgia where state law provides that "a restitution order shall be enforceable as a civil judgment by execution.")

Furthermore, the relationship in this proceeding between the criminal defendant and her victim lacks other typical attributes of a debtor-creditor relationship. Unlike an obligation which arises out of a contractual, statutory or common law duty, here the obligation is rooted in the traditional responsibility of a state to protect its citizens by enforcing its criminal statutes and to rehabilitate an offender by imposing a criminal sanction intended for that purpose.

*Pellegrino, supra,* Memorandum and Proposed Order, July 25, 1984 at 5–6. Moreover, like *Pellegrino* there is no indication that the state prosecuted Mead and sought restitution in order to collect a debt for the victim of her crime. It is therefore concluded that the restitution ordered in this case is not a "debt" under Bankruptcy Code § 101(11).

## B.

## INJUNCTION OF PROSECUTION OR OTHER METHODS OF OBTAINING PAYMENT OF RESTITUTION

■ In support of her claim that the defendants should be enjoined from enforcing the restitution order, Mead relies upon a line of cases wherein bankruptcy courts have enjoined state prosecutions for violation of bad check statutes commenced after the filing of the debtor's petition because the courts determined that the principal motivation behind the prosecution was to obtain payment of the underlying dischargeable debt for which the bad check was issued. *See e.g., In re Alan I.W. Frank Corp.,* 19 B.R. 41 (Bankr.E.D.Pa. 1982); *In re Taylor,* 16 B.R. 323 (Bankr.D. Md.1981). Mead also relies upon cases in which bankruptcy courts have allowed such bad check prosecutions to continue but have either enjoined the creditor from accepting restitution, *In re Redenbaugh,* 37 B.R. 383 (Bankr.C.D.Ill.1984); *In re Holder,* 26 B.R. 789 (Bankr.M.D.Tenn.1982); *Johnson v. Lindsey,* 16 B.R. 211 (Bankr.M. D.Fla.1981), or enjoined the prosecutor from recommending restitution, *In re Redenbaugh, supra; In re Barnett,* 15 B.R. 504 (Bankr.D.Kan.1981).

Mead's reliance on those cases is misplaced. Here the prosecution, conviction, and sentencing occurred before Mead filed her bankruptcy petition. Moreover, as noted, there is no evidence that the state pros-

ecuted Mead as a debt collecting effort on behalf of her crime victim.

Having concluded that restitution is not a debt as defined in Code § 101(11), it follows that the obligation is not discharged and that state authorities are not prohibited from prosecuting the debtor or otherwise attempting to obtain compliance with the restitution order. Indeed, this court recognizes the principles of comity and federalism under which federal courts are to exercise restraint from interference with traditional functions of state governments. *See Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971); *Perez v. Ledesma,* 401 U.S. 82, 91 S.Ct. 674, 27 L.Ed.2d 701 (1971); *In re Davis,* 691 F.2d 176 (3d Cir.1982) *aff'g.* 18 B.R. 701 (D.Del. 1982); *Barnette v. Evans,* 673 F.2d 1250 (11th Cir.1982); *In re Tenpins Bowling, Ltd.,* 32 B.R. 474 (Bankr.M.D.Ga.1983); *In re Wilson,* 30 B.R. 91 (Bankr.E.D.Tenn. 1983); *In re Richardello,* 28 B.R. 344, 10 B.C.D. 743 (Bankr.D.Mass.1983).

### C.

### DOES ENFORCEMENT OF RESTITUTION ORDER VIOLATE THE AUTOMATIC STAY?

 Although Mead's complaint does not allege that the defendants violated the automatic stay, Code § 362(a), by their post-petition attempts to enforce the restitution order, that issue was briefed by both counsel and will be considered here.

Code § 362(b)(1) provides in relevant part:

(b) The filing of a petition ... does not operate as a stay—

(1) under subsection (a) of this section, of the commencement or continuation of a criminal action or proceeding against the debtor.

The language of that provision, together with its legislative history,[5] expresses the congressional policy against bankruptcy court interference with criminal proceedings. The state court's order of restitution cannot be viewed as separate from the conviction and sentencing of Mead but rather as an integral part of the criminal proceeding against her. Under those circumstances, the Bankruptcy Code mandates an exception to the automatic stay. *See In re Pellegrino, supra,* Memorandum and Proposed Order at 10–13, *accord, In re Newton,* 15 B.R. 708, 710, 8 B.C.D. 522, 523 (Bankr.N.D.Ga.1981) *aff'd.,* No. C81–2170A (N.D.Ga. May 24, 1982).

It is therefore concluded that the enforcement of the state court's order of restitution was excepted from the automatic stay, and any post-petition action by the defendants in that regard did not constitute contempt of this court's order.

### ORDER

For the foregoing reason, the obligation created by the April 26, 1983 state court restitution order is not discharged, and Mead is not entitled to the injunctive or other relief claimed in her complaint and judgment may enter accordingly.

DALY, Chief Judge.

It is SO ORDERED.

---

5. The legislative history of Code § 362(b)(1) states,

The bankruptcy laws are not a haven for criminal offenders, but are designed to give relief from financial over-extension. Thus, criminal actions and proceedings may proceed in spite of bankruptcy.

House Report No. 595, 95th Cong., 1st Sess. 342, *reprinted in* 1978 U.S.Code Cong. & Ad.News 5963, 6299. *See also* S.Rep. No. 989, 95th Cong., 2nd Sess. 51, *reprinted in* 1978 U.S.Code Cong. & Ad.News 5787, 5837.