**In re Jennie P. OSLAGER, Debtor.**

**COMMONWEALTH OF PENNSYLVANIA, DEPARTMENT OF PUBLIC WELFARE, Plaintiff,**

v.

**Jennie P. OSLAGER, Defendant.**

**Bankruptcy No. 5–81–00874.**
**Adv. No. 5–82–0246.**

United States Bankruptcy Court,
M.D. Pennsylvania.

Jan. 9, 1985.

As Amended Feb. 28, 1985.

John H. Doran, Doran & Nowalis, Wilkes-Barre, Pa., for defendant/debtor.

Jason W. Manne, Asst. Counsel, Dept. of Welfare, Harrisburg, Pa., for plaintiff.

## OPINION AND ORDER

THOMAS C. GIBBONS, Bankruptcy Judge:

The Commonwealth of Pennsylvania, Department of Public Welfare (DPW) commenced this proceeding by filing a complaint to revoke a discharge or alternatively, to determine the dischargeability of a debt under §§ 727 and 523 of the Bankruptcy Code. The DPW moved this court for Summary Judgment pursuant to Bankruptcy Rule 7056. For the reasons set forth, we grant DPW's Motion.

The facts are as follows. On October 5, 1981, the debtor, Jennie P. Oslager (Oslager) pled guilty to a charge of welfare fraud. Oslager was sentenced to pay a $160.00 fine and ordered to make restitution to the Pennsylvania Department of Public Welfare in the amount of $5,101.28. She was also placed on probation for twenty months and ordered to pay the costs of prosecution. On November 2, 1981, the debtor filed a petition for bankruptcy. The DPW was scheduled as a secured creditor holding a judgment lien at No. 257 April of 1976 in Bradford County. The DPW was not, however, scheduled as a creditor entitled to restitution under the October 5, 1981 criminal sentence. On December 1, 1981, the Bankruptcy Court issued an order for a meeting of creditors, which fixed February 18, 1982 as the last day for filing a complaint to object to the discharge of debts pursuant to 11 U.S.C. § 523. Although the DPW received notice of the hearing, it failed to file a complaint by the February 18, 1982 date. On March 10, 1982, the debtor amended her schedules and listed the restitution obligation owed to the Department of Public Welfare as contemplated by the criminal sentence. Another notice was issued to the DPW setting a final date to file a complaint to determine the dischargeability of the debt, but once again the DPW failed to respond. On April 13, 1982, Oslager was discharged of her dischargeable debts.

On May 6, 1982, the DPW filed a complaint against Oslager seeking a revocation of Oslager's discharge or alternatively, to determine the debtor's restitution obligation was not a dischargeable debt. The complaint consisted of six counts. Three counts alleged fraud on the part of Oslager and in particular that Oslager intentionally omitted the restitution obligation from her schedules and subsequently intentionally mis-scheduled that debt. DPW claims that this action in itself was grounds to revoke the debtor's discharge or make the debtor's restitution obligation nondischargeable. The other three counts raised issues of law. In particular, the DPW has raised a number of constitutional challenges to the sufficiency of the notices from the Bankruptcy Court to creditors alleging that the notices violate notions of fundamental procedural fairness and due process. The DPW alleges that the present notice does not permit creditors to make an intelligent decision as to whether they wish to object to the dischargeability of a debt. The DPW filed a Motion for Summary Judgment on the issues concerning the constitutional challenges to the sufficiency of the notice issued by the Bankruptcy Court. Subsequent to filing the motion, the DPW filed two Motions for Leave to File an Amended Complaint. The first motion requests that this court declare whether or not the DPW would violate

federal law if it initiated proceedings to punish Oslager for being in default of her sentence of restitution as part of her probation. The second motion asserts that a restitution obligation arising under a criminal sentence is absolutely nondischargeable under the provisions of the Bankruptcy Code and requests that this court declare that the debtor's restitution obligation is indeed nondischargeable under the Bankruptcy Code. Oslager replied that she had no objection to the new issues raised in the motions to amend the first complaint from being considered by the court, but objected to their consideration in the Motion for Summary Judgment filed by the DPW. We note that pursuant to Federal Rule of Civil Procedure 15(c) amendments relate back to the date of the original pleading. We, therefore, find that the claims asserted in both motions to amend the original complaint are properly the subject of the DPW's Motion for Summary Judgment. We make this determination because courts have not been hesitant to allow amendments where the moving party has not been guilty of bad faith and is not acting for the purposes of delay and that the opposing party will not be unduly prejudiced in presenting a defense and that the issues will not be unduly delayed. See Volume 3, *Moore's Federal Practice,* § 15.-08. Under all of the circumstances herein, there seems no reason to prevent DPW's motions to amend the complaint from being considered in the Motion for Summary Judgment. Oslager was not unduly prejudiced because she was given ample time to respond to the issues raised in the motions to amend the original complaint and indeed filed a reply brief addressing those issues.

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, which is made applicable to this proceeding through Bankruptcy Rule 7056, summary judgment may be entered only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hollinger v. Wagner Min-*

*ing Equipment Co.,* 667 F.2d 402, 405 (3rd Cir.1981); *Franklin Federal Savings and Loan Association of Wilkes-Barre v. Ripianzi* (In re Ripianzi), 27 B.R. 15 (M.D.Pa. 1982). Additionally, "the moving party has the burden of demonstrating the absence of any material factual issue genuinely in dispute." *In re Euro-Swiss Int'l Corp.,* 11 B.C.D. 113, 33 B.R. 872 (S.D.N.Y.1983). The plaintiff must "do more than whet the curiosity of the court, he must support vague accusations and surmise with concrete particulars." See *In re Euro-Swiss Int'l Corp.,* citing *Applegate v. Top Associates,* 425 F.2d 92, 96 (2d Cir.1970). The Third Circuit has made it clear "that courts are to resolve any doubts as to the existence of genuine issues of fact against moving parties." *Hollinger, supra; Ness v. Marshall,* 660 F.2d 517, 519 (3rd Cir.1981). In addition, "[i]nferences to be drawn from the underlying facts contained in evidential sources submitted to the trial court must be viewed in the light most favorable to the party opposing the motion." *Goodman v. Mead Johnson & Co.,* 534 F.2d 566, 573 (3d Cir.1976), *cert. denied,* 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977). We find DPW has met its burden of demonstrating that there are no genuine issues as to any material facts requiring this court to grant a summary judgment in its favor. We reach this decision because DPW's complaint to determine dischargeability of a debt, Motion for Summary Judgment, and supporting brief convince us that no genuine issues exist to be tried.

■ The DPW first argues that the present system of notices to creditors regarding potentially dischargeable debts are constitutionally inadequate. The DPW bases its challenges on the Fifth and Tenth Amendments to the United States Constitution and Article III, Section 2, Clause 2 and Article IV, Section 3, Clause 2 of the United States Constitution and other considerations of federalism. The DPW also relies on various provisions of the Bankruptcy Code, including §§ 342, 523, and 727. There is an oft quoted fundamental precept

that statutes must be construed if possible to avoid constitutional questions.

"When the validity of an act of the Congress is drawn in question, and even if a serious doubt of constitutionality is raised, it is a cardinal principle that this Court will first ascertain whether a construction of the statute is fairly possible by which the question may be avoided."

*In re Benny,* 3 Bankr.L.Rep. (CCH), ¶ 70,-123A (Bankr.N.D.Cal. Nov. 28, 1984) citing *Crowell v. Benson,* 285 U.S. 22, 62, 52 S.Ct. 285, 296, 76 L.Ed. 598 (1932). See also Fn. 6.

We have determined that resolution of this proceeding does not require us to delve into the constitutional challenges to the present system of notices sent to creditors from the Bankruptcy Court. Rather, we will make our decision by determining whether an obligation to pay restitution is a debt contemplated by the Bankruptcy Code.

■ The DPW argues that the criminal restitution order is an obligation which is nondischargeable per se. DPW further argues that the criminal restitution obligation does not create a debtor-creditor relationship. Instead, the restitution obligation is a part of a criminal conviction and is not a debt which creates a property interest in the victim and, therefore, can be modified by a court without regard to the rights of a victim. Oslager replies that the Commonwealth of Pennsylvania, through the Department of Public Welfare, is a victim and there is a possibility that restitution in this case is really an order for repayment to the victim which can be considered a debt under the Bankruptcy Code. We find Oslager's argument without merit.

This is not the first court to determine the issue of whether restitution is a debt contemplated by the Bankruptcy Code. The leading case in this area is *In re Button,* 8 B.R. 692 (Bankr.W.D.N.Y.1981). The *Button* court held that restitution ordered as a condition of probation under New York law was not a debt and the victim was not a creditor as those terms are contemplated by the Bankruptcy Code.

Other courts have also held that a debtor's obligation to make restitution as a condition of probation is not a debt as contemplated by the Bankruptcy Code. See *In re Pellegrino,* 42 B.R. 129 (Bankr.Conn.1984), *In re Johnson,* 32 B.R. 614 (Bankr.Col. 1983); *In re Magnifico,* 21 B.R. 800 (Bankr.Ariz.1982); *In re Button, supra.* See also *In re Pellegrino, supra,* fn. 8, p. 133. What all these courts have in common is that each looked to the law of their particular jurisdiction to determine the intent and purposes for sentences of probationary restitution. Oslager argues that there is a chance that the order of restitution in this case is merely a way to get a payment from the debtor that would otherwise be dischargeable in bankruptcy. We disagree. Under Pennsylvania law an order requiring restitution is authorized by § 1106 of the Crimes Code of December 6, 1972, 18 Pa.C.S. § 1106. "The purpose of a sentence of restitution and the reason for its imposition, is the rehabilitative goal it serves by 'impressing upon the offender the loss he has caused and his responsibility to repair that loss as far as it is possible to do so.' " *Commonwealth of Pennsylvania v. Wood,* 300 Pa.Super. 463, 446 A.2d 948 (1982) citing *Commonwealth v. Kerr,* 298 Pa.Super. 257, (1982), 444 A.2d 758, 760 (1982), quoting *Commonwealth v. Erb,* 286 Pa.Super. at 79, 428 A.2d at 581 and *Commonwealth v. Fuqua,* 267 Pa.Super. at 508, 407 A.2d at 26 (emphasis omitted and supplied). The *Pellegrino* court also addressed the policy behind sentences of restitutionary probation:

"[t]he relationship in this proceeding between the criminal defendant and her victim lacks other typical attributes of a debtor-creditor relationship. Unlike an obligation which arises out of a contractual, statutory or common law duty, here the obligation is rooted in the traditional responsibility of a state to protect its citizens by enforcing its criminal statutes and to rehabilitate an offender by imposing a criminal sanction intended for that purpose." *Pellegrino, supra* at 133.

Oslager also attempts to make an argument based on the fact that the victim in this case is the Commonwealth, which is the same person attempting to enforce the restitution debt against the debtor. Oslager stresses that because the Commonwealth has several different roles in this case it could substantially alter the effectiveness of any arguments that the Commonwealth made in reliance upon *In re Button* and other cases cited by the Commonwealth. The court in *In re Pellegrino, supra,* addressed this very issue and we find the court's comments pertinent. The *Pellegrino* court wrote at p. 134:

> The question then is does the fact that a state agency was the victim of a crime alter the conclusion that restitution is not a debt within the meaning of Code § 101(11)? While several courts have considered restitution in the context of a private victim (cites omitted) this appears to be the first court to consider the issue where a state is both the victim of the crime and the recipient of the restitution.
>
> Although several parts of the Connecticut governmental unit were involved in the prosecution, collection, deposit and enforcement process necessitated by Pellegrino's criminal conduct, each must be considered as a separate entity in analyzing whether a debtor-creditor relationship was established by the state court order of restitution. Therefore the mere fact that one state agency was the actual victim of the crime and another part of the same governmental unit prosecuted Pellegrino and may enforce the order of restitution is an insufficient basis to create a debtor-creditor relationship between Pellegrino and the State. Had Pellegrino committed a crime against a private citizen, that victim, as previously observed, could not enforce the restitution order. Under those circumstances there would be no debtor-creditor relationship and no "debt" as defined in Code § 101(11) to be discharged. It is accordingly concluded that the mere fact that the State of Connecticut was the victim of Pellegrino's crime is irrelevant to the issues presented here. As Assistant

State's Attorney Schuman correctly argued, "the people of the state [cannot] have fewer rights than a private victim."

We find this reasoning persuasive and determine that the fact Pennsylvania was the victim of a crime has no bearing on whether the present restitution obligation created a debt under the Bankruptcy Code.

This court must also not abandon or dismiss the dictates of *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669, 27 Lawyers Ed.2d 669 (1971). Once again, we rely for guidance on the *Pellegrino* court which provided:

> "... federal courts should use restraint when their decisions might interfere with traditional state functions. There is no more appropriate application fo that policy than in the area of criminal law where states have a primary responsibility to promote the safety and welfare of their citizens through the enforcement of their criminal statutes. This policy, which extends to noninterference with state criminal proceedings, is endorsed by the Bankruptcy Reform Act of 1978 and its legislative history ..."

Finally, we must address Oslager's contention that the DPW's complaint as it regards the objection to discharge of the obligation was not filed timely. In view of our determination that the order of restitution under the facts of this case is one in the nature of rehabilitation rather than an order for repayment to the victim, we find there is no debt as contemplated by the Bankruptcy Code and, therefore, there is no pre-existing debtor-creditor relationship between the Commonwealth and Oslager. We also find that the probationary obligation is not within scope of debts dischargeable or subject to the stay or discharge provisions of the Bankruptcy Code. Since the probationary restitution is not a debt it is, therefore, not subject to the time restrictions of the discharge provisions of the Bankruptcy Code and Bankruptcy Rules and this court finds that the summary judgment was timely filed. We also find that this criminal proceeding was a matter entirely within the jurisdiction of

the courts of the Commonwealth of Pennsylvania and we believe that this court does not have jurisdiction to interfere with the sentence of the state court.

We make the above findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.