In re Edward J. DAVENPORT, Sr.
a/k/a Edward Davenport and
Debora A. Davenport, Debtors.

Edward & Debora
DAVENPORT, Plaintiffs,

v.

COMMONWEALTH OF PENNSYLVANIA, DEPARTMENT OF PUBLIC WELFARE and Court of Common Pleas Of Bucks County, Adult Probation and Parole Dept. and Edward Sparkman, Trustee, Defendants.

Bankruptcy No. 87–02395F.
Adv. No. 87–0737F.

United States Bankruptcy Court,
E.D. Pennsylvania.

March 8, 1988.

---

David A. Searles, Community Legal Services, Inc., Philadelphia, Pa., for debtors/plaintiffs, Edward Davenport and Debora Davenport.

Mary B. Seiverling, Dept. of Public Welfare, Harrisburg, Pa., for defendant, Com. of Pa., Dept. of Public Welfare.

Edward Sparkman, Philadelphia, Pa., standing chapter 13 Trustee.

John D. Blumenthal, Asst. County Sol., Doylestown, Pa., for defendant, Court of Common Pleas of Bucks County, Adult Probation and Parole Dept.

## OPINION

BRUCE I. FOX, Bankruptcy Judge:

The narrow issue before me is whether a criminal restitution obligation may be discharged in a chapter 13 case. The debtors have commenced an adversary proceeding seeking a determination that an order of criminal restitution requiring them to make payments to the Bucks County Adult Probation and Parole Department represents a dischargeable unsecured debt which is provided for by their confirmed chapter 13 plan and which is made dischargeable by virtue of 11 U.S.C. § 1328. Both the Probation and Parole Department as well as the Commonwealth of Pennsylvania, Department of Public Welfare, (DPW) to whom the restitution payments would ultimately be sent, vigorously oppose the dischargeability of this obligation.

## I.

The underlying facts are not seriously controverted.

On September 17, 1986, both debtors entered guilty pleas to the crime of welfare fraud in state court in Bucks County, Pennsylvania. Each was sentenced to one year probation; each was ordered to make criminal restitution payments of $208.00 per month beginning in December, 1986, until a total of $2,072.40 was repaid by the debtors. Payments were to be completed by September, 1987, and were to be sent to the Probation and Parole Department which was then to forward them to DPW.

On May 15, 1987, the debtors filed a voluntary petition in bankruptcy under chapter 13. The criminal restitution obligation was listed as an unsecured debt payable to DPW which was to be paid as other unsecured debts are paid. When the debtors failed to make restitution payments as required by state court order, the Probation and Parole Department commenced violation hearings on July 2, 1987. An informal hearing was scheduled before the Department on August 6, 1987. On July 20, 1987, debtors, through their bankruptcy counsel, informed the Department of the pendency of their bankruptcy case and requested that the Department consider withdrawing the parole violation charges. When the Department decided to press the violation issue, this adversary proceeding was initiated on August 12, 1987. On October 20, 1987, the debtors' chapter 13 plan was confirmed without objection from any creditors and with the express approval of the standing chapter 13 trustee. See In re Hines, 723 F.2d 333 (3d Cir.1983).

This proceeding was heard by this court prior to a hearing scheduled in state court for October 29, 1987, on the question of probation violation. While the Department was willing to request that the violation hearing be postponed, pending the outcome

of this hearing, ultimately the debtors decided to proceed in state court. The parties informed me that state court insisted and the debtors agreed to make restitution payments; [1] however, the debtors are also continuing to press their dischargeability complaint.[2] *See In re Johnson–Allen,* 69 B.R. 461, 463 (Bankr.E.D.Pa.1987) *appeal pending* (debtor resumed making restitution payments pending disposition of dischargeability complaint).

## II.

The fact that the debtors' chapter 13 plan has already been confirmed provides a framework for the dispute before me. 11 U.S.C. § 1327(a) states that:

> The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan.

Thus, the debtor's plan, which provides for the payment of their criminal restitution obligation, is now binding upon their creditors. *See Matter of Gregory,* 705 F.2d 1118 (9th Cir.1983) (embezzlement debt). *See also In re Bonanno,* 78 B.R. 52 (Bankr.E.D.Pa.1987); *In re Stern,* 70 B.R. 472 (Bankr.E.D.Pa.1987). However, although the plan terms may be binding, 11 U.S.C. § 1328(a) limits the chapter 13 discharge to, *inter alia,* "all debts provided for by the plan." Clearly, the criminal restitution obligation is "provided for" by the debtors' plan. *Matter of Gregory.* The issue therefore becomes whether the criminal restitution order is a "debt"—a matter expressly left open by the Supreme Court in *Kelly v. Robinson,* 479 U.S. 36, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986). If so,

upon completion of their plan payments, the debtors' obligation to make restitution must be discharged. *See In re Cullens,* 77 B.R. 825 (Bankr.D.Colo.1987); *In re Stern.* If the obligation is not a "debt" within the meaning of the Bankruptcy Code, *see e.g., In re Oslager,* 46 B.R. 58 (Bankr.M.D.Pa. 1985), then the obligation is not discharged.[3]

With statutory interpretation one starts first with the language of the relevant statutory provisions. *Kelly v. Robinson,* 107 S.Ct. at 358. A "debt" is defined as a "liability on a claim." 11 U.S.C. § 101(11). A claim is defined as follows:

> (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or
>
> (B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured;

11 U.S.C. § 101(4).

■ This definition is much broader than existed under the former Bankruptcy Act of 1898. *See Ohio v. Kovacs,* 469 U.S. 274, 105 S.Ct. 905, 83 L.Ed.2d 649 (1985); *In re Heincy,* 78 B.R. 246 (Bankr. 9th Cir.1987); *In re Johnson–Allen,* 69 B.R. 461, 467 (Bankr.E.D.Pa.1987). In this circuit, the Court of Appeals has interpreted this definition with an eye toward its legislative history:

> Congress intended the definition of a claim to be very broad; the legislative history states:

---

**1.** A new order was entered granting the debtors three years to make restitution payments.

**2.** The debtors sought to introduce evidence that they never agreed to make restitution in September 1986. The defendants sought to introduce evidence that the debtors could afford restitution payments. The former is more properly addressed to state court. The latter is barred by the entry of the confirmation order. If the defendants believe that all of the debtors disposable income was not to be paid under their plan, this should have been raised prior to confirmation. *Education Assistance Corp. v. Zellner,* 827 F.2d 1222, 1226 (8th Cir.1987); *In re Fries,* 68 B.R. 676 (Bankr.E.D.Pa.1986).

**3.** This analysis differs from that adopted in *In re Newton,* 15 B.R. 708 (Bankr.N.D.Ga.1981). The *Newton* court considered that the criminal restitution obligation was a debt, but it was nondischargeable nonetheless. *Newton* held that policy considerations required it to interpret § 1328(a) beyond its stated exceptions.

The definition is any right to payment, whether or not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured.... By this broadest possible definition, and by the use of the terms throughout the title 11, especially in subchapter I of chapter 5, the bill contemplates that all legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in the bankruptcy case. It permits the broadest possible relief in the bankruptcy court.

*Matter of M. Frenville Co., Inc.*, 744 F.2d 332, 336 (3d Cir.1984) *cert. denied*, 449 U.S. 1160, 105 S.Ct. 911, 83 L.Ed.2d 925 (1985) *quoting* H.R.Rep. No. 95–595, 95th Cong. 2d Sess. 309 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6266. *Accord e.g., Ohio v. Kovacs; Remington Rand Corp. v. General Services Administration*, 836 F.2d 825 (3d Cir.1988). The existence of a claim, for bankruptcy purposes, arises when: (1) the claimant possesses a right to payment; and (2) the right to payment arose prepetition.[4] *Remington Rand* 836 F.2d at 830.

The criminal restitution obligation is derived from an order of the Bucks County Court of Common Pleas, entered pursuant to 18 Pa.C.S. § 1106. This criminal statute defines restitution as "the return of the property of the victim or payments in cash or the equivalent thereof pursuant to an order of the court." The amount of restitution and manner of payment is left, within limits, to court discretion. If restitution is ordered, payment shall be made to the probation department which shall then forward the payments to the victim. While the victim is not divested of any right to seek a civil damage award, that award must be reduced by the restitution payments received. Finally, enforcement of the restitution order is by contempt proceeding. *Id. See Commonwealth v. Wood*, 300 Pa.Super. 463, 446 A.2d 948 (1982).

■ I agree with those courts that have concluded that restitution obligations fall within the broad definition of a "claim", recently enacted by Congress with the passage of the Bankruptcy Code. *E.g. In re Heincy; In re Hackney*, 83 B.R. 20, 16 B.C.D. 1357 (Bankr.N.D.Cal.1988); *In re Cullens*, 77 B.R. 825 (Bankr.D.Colo.1987); *In re Taite*, 76 B.R. 764 (Bankr.C.D.Cal. 1987); *In re Johnson–Allen; In re Gilliam*, 67 B.R. 83 (Bankr.M.D.Tenn.1986); *In re Brown*, 39 B.R. 820 (Bankr.M.D. Tenn.1984); *In re Newton. Contra e.g., In re Oslager; In re Pellegrino*, 42 B.R. 129 (Bankr.D.Conn.1984); *In re Button*, 8 B.R. 692 (Bankr.W.D.N.Y.1981). Both the Probation and Parole Department as well as DPW had the prepetition right to demand payment from the debtors. That the Department's right was enforceable by contempt rather than by civil execution, or that it arose as a result of a criminal order rather than by a civil judgment does not make it any less of a right to payment:

If the Bankruptcy Code said that only orders to pay money by civil courts are debts for bankruptcy purposes, then credence could be given to the defendant's argument that a criminal court restitution order does not embody a "debt" dischargeable in bankruptcy. However, nothing in the Bankruptcy Code suggests that only civil courts enter orders to pay money that are subject to discharge in bankruptcy. A restitution order by a criminal court no less acknowledges the existence of a debt than an order of a civil court reducing that claim to judgment. The fact that a criminal court might participate in enforcement or collection of the debt between victim and debtor/defendant does not make the underlying obligation a "nondebt" for bankruptcy purposes.

*In re Brown*, 39 B.R. at 822. *Accord e.g. In re Johnson–Allen. Se also 5 Collier on Bankruptcy* ¶ 1300.12[2] (15th Cir. 1987).

---

4. There is no dispute that both the debtor's conduct which gave rise to their prosecution and the restitution order occurred prepetition.

Indeed, this point is emphasized by the existence of 11 U.S.C. § 523(a)(7). Since only "debts" are discharged in bankruptcy, fines, penalties and forfeitures made payable to governmental units must be debts; otherwise there would be no need to expressly make such obligations nondischargeable in chapter 7 and some chapter 11 cases. *In re Cullens; In re Johnson–Allen.* In likening criminal restitution obligations to fines and penalties, the Supreme Court in *Kelly v. Robinson* made it difficult to conclude that a governmental unit possesses no right to payment. Thus, both the Department and DPW had a right to payment which arose prepetition. Both entities possessed a "claim" and held a "debt" within the meaning of the Bankruptcy Code. *See Remington Rand.*[5]

### III.

■ Although I conclude that restitution obligations are claims as defined by 11 U.S.C. § 101(4), that conclusion does not completely end the analysis in this proceeding. In *Kelly v. Robinson*, 107 S.Ct. at 361, the Supreme Court stated:

> In light of the established state of the law—that bankruptcy courts would not discharge criminal judgments—we have serious doubts whether congress intended to make criminal penalties "debts" within the meaning of § 101(4).

(footnote omitted).

These doubts arose because the Court, in reviewing decisions under the former Bankruptcy Act of 1898, concluded that criminal restitution obligations were not dischargeable. It is a rule of statutory construction that clear evidence should be found before a court concludes that Congress intended to alter longstanding statutory interpretations. *Midlantic National Bank of New Jersey Department of Environmental Protection*, 474 U.S. 494, 106 S.Ct. 755,

760, 88 L.Ed.2d 859 (1986). *Accord e.g. In re Paolino*, 75 B.R. 641, 649 (Bankr.E.D. Pa.1987). Thus, the focus becomes one of Congressional intent regarding the scope of the chapter 13 bankruptcy discharge. When considering this question of intent, a bankruptcy court must also be mindful, not just of the prior policy concerning criminal restitution, but also, of federalism and comity concerns regarding federal court interference with state court criminal prosecutions, expressed in decisions such as *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).

### A.

When Congress accepted the recommendation of the Bankruptcy Commission to revise former chapter XIII, it did so recognizing that chapter XIII had not been much utilized at least in some parts of the country. The Report of the Committee on the Judiciary, House of Representatives stated:

> In addition, an overly stringent and formalized chapter XIII (wage earner plans) has discouraged overextended debtors from attempting to arrange a repayment plan under which all creditors are repaid most, if not all, of their claims over an extended period. The hearings before the Subcommittee indicated strongly that most consumer debtors would rather work out a repayment plan than file straight bankruptcy. They opt for straight bankruptcy only because present chapter XIII simply cannot meet their needs. Only in certain areas of the country where the bankruptcy judges have taken an active interest, have put in the extra effort required to make chapter XIII work, and have encouraged the bar to recommend its use, has chapter XIII provided any substantial or realistic alternative to straight bankruptcy liquidation.

---

**5.** Although the Probation and Parole Department was not listed as a creditor, it had knowledge, as a defendant, of the debtors' bankruptcy filing and their intentions regarding their criminal restitution obligation. Without now deciding this issue, it is possible that service of this adversary proceeding constituted sufficient notice to bind the Department to the confirmed plan. *See Reliable Electric Co. v. Olson Construction Co.,* 726 F.2d 620 (10th Cir.1984). *See also* 11 U.S.C. § 523(a)(3). Here, the adversary complaint was served more than two months prior to confirmation. Of course, it is better practice to have scheduled the Department as a creditor. *In re Johnson–Allen,* 69 B.R. at 465.

H.R.Rep. No. 95–595, 95th Cong. 1st Sess. at 117 (1977), U.S.Code Cong. & Admin. News 1978, p. 6077. (footnotes omitted). Congress, after reviewing the commission report and conducting hearings, determined that an attractive, flexible chapter 13 would benefit both creditors and debtors. Debtors would be able to avoid the effects (such as loss of nonexempt property) and stigma of liquidation while general unsecured creditors would be able to recover some repayment on outstanding debts:

> The benefit to the debtor of developing a plan of repayment under chapter 13, rather than opting for liquidation under chapter 7, is that it permits the debtor to protect his assets. In a liquidation case, the debtor must surrender his nonexempt assets for liquidation and sale by the trustee. Under chapter 13, the debtor may retain his property by agreeing to repay his creditors. Chapter 13 also protects a debtor's credit standing far better than a straight bankruptcy, because he is viewed by the credit industry as a better risk. In addition, it satisfies many debtors' desire to avoid the stigma attached to straight bankruptcy and to retain the pride attendant on being able to meet one's obligations. The benefit to creditors is self-evident: their losses will be significantly less than if their debtors opt for straight bankruptcy.

*Id.* at 118, U.S.Code Cong. & Admin.News 1978, p. 6079.

Various changes were engrafted into the new chapter 13 that make it an attractive alternative to chapter 7. For example, eligibility to become a debtor under chapter 13 was expanded: no longer were only wage earners qualified to formulate reorganization plans. Reorganization procedures were made inexpensive. There was no cumbersome voting or disclosure requirements. As the House Report noted:

> This bill attempts to cure these inadequacies in the Bankruptcy Act and to prevent the frequent problems confronting consumer debtors that have occurred both in the bankruptcy court and out. First, the bill simplifies, expands, and makes more flexible wage earner plans, called plans for Individuals with Regular

Income, under the bill. Second, many of the provisions in the current bankruptcy law that enable private action to undo the beneficial effects of bankruptcy are changed. Third, the debtor is given adequate exemptions and other protections to ensure that bankruptcy will provide a fresh start. Fourth, the bankruptcy system is modified to eliminate the close relationship between a bankruptcy judge and a trustee that often works to the consumer debtor's detriment. The premises of the bill with respect to consumer bankruptcy are that use of the bankruptcy law should be a last resort; that if it is used, debtors should attempt repayment under chapter 13, Adjustment of debts of an Individual and Regular Income; and finally, whether the debtor uses chapter 7 liquidation, or chapter 13, Adjustment of Debts of an Individual, bankruptcy relief should be effective, and should provide the debtor with a fresh start.

*Id.* at 117–118, U.S.Code Cong. & Admin. News 1978, p. 6078. *See also In re Bobroff,* 766 F.2d 797, 803–804 (3d Cir.1985); 5 *Collier on Bankruptcy* ¶ 1300.02 (15th ed. 1987); 3 *Norton Bankruptcy Law and Practice,* ¶ 66.07 (1981).

Another method chosen by Congress to make chapter 13 reorganization plans attractive to individual creditors was to provide them with a broad discharge upon completion of their plan payments—broader than the discharge received in chapter 7. As the Commission Report made clear:

> If the debtor wants to pay his debts pursuant to a plan, and if the creditors are willing to go along, he should be allowed to do so. The fact that a discharge would not be available in a liquidation case should furnish a greater incentive for the debtor to perform under the plan.

*Report of the Commission on The Bankruptcy Laws of the United States,* H.R. Doc. No. 93–137. 93d Cong. 1st Sess. Pt. I at 175 (1973). Therefore, 11 U.S.C. § 1328(a) makes dischargeable debts that would not be dischargeable in chapter 7, such as debts involving fraud and embez-

zlement. *See Matter of Gregory; In re Gilliam; 3 Norton Bankruptcy Law and Practice* ¶ 78.01 (1979).[6] Even fines, penalties and forfeitures, made payable to governmental units, are made dischargeable in chapter 13.

In determining whether Congress intended to make criminal restitution payments nondischargeable, I agree with the Ninth Circuit Bankruptcy Appellate Panel, that the examination of congressional intent is best achieved by considering the discharge provisions of chapter 13, rather than the definition of "claim" or "debt":

> If Congress desired, for policy reasons, to preclude a state criminal defendant in bankruptcy from nonpayment of an order of restitution, it is unlikely that it would do so by limiting the definition of "claim" and "debt". A more effective means to this end would be achieved by altering the dischargeability provisions under the Code.

*In re Heincy*, 78 B.R. at 248. *See also In re Brown*, 39 B.R. at 829. As discussed above, I am persuaded that Congress understood that the broad discharge of chapter 13 would make dischargeable debts which were historically nondischargeable under the provisions of the Bankruptcy Act. This includes fines and penalties, as well as restitution obligations.

Recent amendments to the Bankruptcy Code have sought to insure that the purposes Congress envisioned when it modified chapter 13 from its precode form are achieved. Insofar as this dispute is concerned, the most significant amendment is 11 U.S.C. § 1325(b):

> (b)(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan—
>
> (A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or

> (B) the plan provides that all of the debtor's projected disposable income to be received in the three-year period beginning on the date that the first payment is due under the plan will be applied to make payments under the plan. (2) For purposes of this subsection, "disposable income" means income which is received by the debtor and which is not reasonably necessary to be expended—
>
> (A) for the maintenance or support of the debtor or a defendant of the debtor; and
>
> (B) if the debtor is engaged in business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business.

By virtue of § 1325(b), unsecured creditors can compel that all of the debtor's disposable income (as defined) will be distributed under a confirmed chapter 13 plan. *See Education Assistance Corp. v. Zellner; In re Fries.*

Were prepetition criminal restitution obligations not dischargeable, conflicts would exist between the debtor's obligation to utilize all of his disposable income in plan payments and his obligation to make restitution. Under state law, 18 U.S.C. § 1106, a court must consider the debtor's financial circumstances, as well as the injury suffered by the victim, when establishing the terms of restitution. The funds from which restitution is ordered would be considered disposable income under § 1325(b). If restitution is not a debt governed by a chapter 13 plan, then either the debtor cannot comply with § 1325(b), or the definition of disposable income must be adjusted. The former result would defeat the congressional goal of encouraging the use of chapter 13; the latter result would defeat the equality of treatment principle focused in 11 U.S.C. § 1322(a)(3), for the prepetition victim would receive greater payments than other unsecured creditors.

As Judge Scholl noted in *In re Johnson-Allen*, Congress determined that the policies to be furthered both by the broad

---

**6.** *Compare* § 1328(b), the hardship discharge, which is not broader than the chapter 7 discharge.

"fresh start" created by the chapter 13 discharge, along with equality of treatment to creditors who shall receive the debtor's disposable income were sufficient reasons to alter precode precedent. This determination is clear from the history surrounding the enactment and amendments to chapter 13.

### B.

Most courts which have expressed difficulty with the notion that a criminal restitution order might be dischargeable, do so in terms quite similar to the following legislative statement which is part of the legislative history of 11 U.S.C. § 362(b):

> The bankruptcy laws are not a haven for criminal offenders but are designed to give relief from finacial overextension. Thus, criminal actions and proceedings may proceed in spite of bankruptcy.

H.R.Rep. No. 95–595, 95th Cong. 1st Sess. 342 (1977), U.S.Code Cong. & Admin.News 1978, p. 6299. *See* In re *Newton*, 15 B.R. at 710. Discharging a restitution obligation does not run counter to this legislative statement. 11 U.S.C. § 362(b)(1) excepts from the operation of the automatic stay "the commencement or continuation of criminal actions against the debtor." The policy of not making the bankruptcy court a "haven" for criminals is preserved by insuring that those accused of a crime may be prosecuted even though they may file bankruptcy petitions. Moreover, federalism, and comity are respected by decisions such as *Matter of Davis*, 691 F.2d 176 (3rd Cir.1982) which forbids a bankruptcy court from enjoining the criminal prosecution even though the debtor fears that restitution will be imposed. Unless the prosecution is brought in bad faith, no injunction may issue. *Id. Accord Barnette v. Evans*, 673 F.2d 1250 (11th Cir.1982).

In forbidding the issuance of an injunction, the Third Circuit noted that the sentencing discretion provided to criminal courts might possibly be affected by provisions of the bankruptcy code. *Matter of Davis*, 691 F.2d at 178, 179, n. 8. The Supreme Court feared that discharging restitution obligations would have such an undesirable result.

> This prospect [discharge] in turn, would hamper the flexibility of state criminal judges in choosing the combination of imprisonment, fines, and restitution most likely to further the rehabilitative and deterent goals of state criminal practice systems.

*Kelly v. Robinson*, 107 S.Ct. at 360 (footnote omitted).

But as the Supreme Court noted, fines and penalties along with restitution are also among the sentencing options accorded to state criminal judges. Yet, there is no dispute that § 1328(a) discharges criminal fines and penalties.[7] There is no expression in either the current statutory language or legislative history that Congress was more protective of restitution obligations than of criminal fines or penalties. Thus, I cannot conclude that comity or federalism concerns mandate that restitution obligations be nondischargeable.

### IV.

To the extent that the chapter 13 discharge is too broad, this results from choices made by Congress. If this is a problem which needs to be addressed it is up to Congress, not this court to do so. *See generally Tennessee Valley Authority v. Hill*, 437 U.S. 153, 185, 98 S.Ct. 2279, 2297, 57 L.Ed.2d 117 (1978); *Gennuso v. Commercial Bank and Trust Co.*, 566 F.2d 437, 443 (3d Cir.1977) (misgivings about the scope of the consumer protection statute should be addressed to Congress not to the court). Indeed, Senate Bill, No. 548, 100th Cong. 1st Sess. would make,

---

7. This case does not present the complex question whether payment of a restitution obligation under a chapter 13 plan is grounds to revoke probation. *See United States v. Caddell*, 830 F.2d 36 (5th Cir.1987) (chapter 11 debtor is not insulated from probation revocation hearing when he fails to comply with restitution order); *In re Gilliam* (only the discharge injunction provided by § 524 protects a chapter 13 debtor from a revocation hearing; (the bankruptcy court does not discuss § 1327)).

some, but not all,[8] restitution obligations nondischargeable in chapter 13. *See* S.Rep. No. 246, 100th Cong. 1st Sess., at 8–9 (1987). The bill was passed by the Senate on July 24, 1987 and is pending before the House. Until 11 U.S.C. § 101(4) or, more likely, § 1328(a) is amended, I have no choice but to apply their terms. Therefore, the debtors' criminal restitutional obligation is dischargeable upon completion of their plan payments. As any payments of the restitution obligation already made would constitute property of the estate, 11 U.S.C. § 1306, any funds paid by the debtors to defendants shall be turned over to the standing chapter 13 trustee. *In re Johnson–Allen.*

An appropriate order will be entered.

---

**8.** The bill seems to make nondischargeable only restitution obligations concerning violation of consumer protection statutes. *See In re Cullens,* 77 B.R. at 828; S.Rep. No. 246, 100th Cong., 1st Sess. at 8–9 (1987).