**In re Cory David NORMAN SS# 524–13–6289 and Sabina G. Norman SS# 245–06–6582, Debtors.**

**Bankruptcy No. 88–B–08231–A.**

United States Bankruptcy Court, D. Colorado.

Jan. 27, 1989.

Stephen E. Berken, Denver, Colo., for debtors.

Sally J. Zeman, Denver, Colo., for Chapter 13 Trustee.

Carol Mullins, Denver, Colo., for Larimer County Court.

## MEMORANDUM OPINION AND ORDER

SIDNEY B. BROOKS, Bankruptcy Judge.

THIS MATTER is before the Court on an Objection to Confirmation of the Debtors' Chapter 13 Plan and an Objection to Discharge of certain criminal penalties and fines in the Chapter 13 case. The Objections were filed by the Larimer County Court, through the Colorado Attorney General's Office. The County Court assessed the fines after misdemeanor convictions of the Debtor, Cory David Norman.

The central and dispositive issue before the Court is whether or not the Debtors may discharge criminal fines and penalties in Chapter 13.

*Background and Findings of Fact*

1. On November 23, 1987, in Larimer County Court, Case No. M–87–101830, Debtor Cory Norman pled guilty to illegal possession of wildlife [§ 33–6–109(1), C.R.S. (1984)] and theft of wildlife [§ 33–6–115(1), C.R.S. (1984)], both misdemeanors.

2. As a result of these criminal convictions, Debtor Cory Norman was fined $700.00 for illegal possession of wildlife and $250.00 for theft of wildlife, as provided by statute.

3. Additionally, as a result of these criminal convictions, Debtor Cory Norman was assessed a $351.00 victim assistance fee to be paid to the Victim's Assistance Fund and $16.00 in court costs. The Victim's Assistance Fund is a discretionary court fund administered by the District Attorney.

4. Larimer County Court Register of Actions shows that a total of $1,317.00 in fines, penalties, and costs were assessed against Debtor Cory Norman. Larimer County Court records show that as of August 4, 1988, Debtor Cory Norman had paid a total of $500.00, leaving a balance due the Larimer County Court of $817.00.

5. On June 21, 1988, Debtors filed their voluntary petition for relief under Chapter 13 of the Bankruptcy Code.

6. Debtors listed the Larimer County Court as a creditor holding an unsecured claim and identified the County Court fines and costs as debts which would be discharged under the Debtors' Chapter 13 Plan.

7. Failure to pay court assessed penalties arising from criminal convictions results, generally, in the Larimer County Court issuing a bench warrant for the arrest and the incarceration of the convicted party.

## Opinion

There is a split of authority in this District on the general issue before this Court. *In re Cullens*, 77 B.R. 825 (Bankr.D.Colo. 1987), determined that criminal restitution orders *are dischargeable* in Chapter 13. *In re Ferris*, 93 B.R. 729 (Bankr.D.Colo. 1988) and *In re Johnson*, 32 B.R. 614 (Bankr.D.Colo.1983), each determined that such restitution orders, and criminal fines and penalties, *are not dischargeable* in Chapter 13. There is, of course, no dispute that criminal restitution orders and penalties are not dischargeable in Chapter 7. *See*, 11 U.S.C. § 523(a)(7) and *Kelly v. Robinson*, 479 U.S. 36, 107 S.Ct. 353, 93 L.Ed. 2d 216 (1986).

This Court is persuaded by, and adopts the view that, criminal fines and penalties, and the order to pay funds to the Victim's Assistance Fund, are *not* dischargeable in Chapter 13. In support of that position, the Court relies on and adopts the decisions, case law, and rationale found in *Johnson* and *Ferris. See, In re Oslager*, 46 B.R. 58 (Bankr.M.D.Pa.1985); *In re Vik*, 45 B.R. 64 (Bankr.N.D.Iowa 1984); *In re Mead*, 41 B.R. 838 (Bankr.D.Conn.1984); *In re Magnifico*, 21 B.R. 800 (Bankr.D.Ariz. 1982); *In re Button*, 8 B.R. 692 (Bankr.W. D.N.Y.1981).

Beyond *Johnson* and *Ferris* however, this Court is convinced that the Code, case law, and intent of Congress all reinforce the proposition that criminal fines and penalties are to be accorded special and separate treatment in bankruptcy proceedings and are not to be summarily discharged in bankruptcy. This is particularly true for fines and penalties, such as in this case, which are punitive, remedial or rehabilitative in nature and not restitution or of a compensatory nature.[1]

First, Sections 362(b)(1) and (b)(4) reflect special Bankruptcy Code deference to criminal proceedings. Code language and legislative history amply demonstrate this theme [2]:

> Thus, where a governmental unit is suing a debtor to prevent or stop violation of fraud, ... or similar police or regulatory laws, or attempting to fix damages for violation of such a law, the action or proceeding is not stayed under the automatic stay. (HR Rep No. 95–595, 95th Cong, 1st Sess 343 (1977); S Rep No. 95–989, 95th Cong, 2d Sess 52 (1978)).

Valid exercise of police powers is not automatically stayed by the Code. That includes imposition of criminal fines and penalties which are remedial or punitive in nature and not compensatory. *See, In re Sam Daily Realty, Inc.*, 57 B.R. 83 (Bankr. D.Hawaii 1985); *See also, In re Harris*, 85 B.R. 858 (Bankr.D.Colo.1988).

Second, discharge of criminal fines and penalties in bankruptcy court is a gross intrusion into and disruption of the state penal code and criminal justice system, clearly not favored by federal courts. The Supreme Court recently expressed the overarching objective of limited federal interference in a state penal code and criminal justice matters:

> Our interpretation of the Code also must reflect the basis for this judicial exception, a deep conviction that federal bankruptcy courts should not invalidate the results of state criminal proceedings. The right to formulate and enforce penal sanctions is an important aspect of the sovereignty retained by the States. *This court has emphasized repeatedly 'the fundamental policy against federal in-*

---

1. It is important to distinguish between criminal sanctions which are penalties, or are in the nature of remedial or rehabilitative measures, as compared with criminal sanctions which are restitution or compensatory in nature. Most cases which decide that criminal sanctions are *not* dischargeable in Chapter 13 involve restitution orders. *See, In re Cancel*, 85 B.R. 677 (N.D.N.Y.1988); *In re Davenport*, 83 B.R. 309 (Bankr.E.D.Pa.1988); *In re Johnson–Allen*, 69 B.R. 461 (Bankr.E.D.Pa.1987).

2. "The filing of a petition under section 301, 302, or 303 of this title ... does not operate as a stay—(1) under subsection (a) of this section, of the commencement or continuation of a criminal action or proceeding against the debtor; ... (4) under subsection (a)(1) of this section, of the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power." 11 U.S.C. § 362(b)(1) and (4).

*terference with state criminal prosecutions.'* (Emphasis added.)

*Kelly v. Robinson, supra* 107 S.Ct. at 360.

Bankruptcy courts, as well, recognize the strong tradition and the judicial policy of noninterference of federal courts in state criminal matters:

> [There is] the long-standing tradition of restraint by federal courts from interference with traditional functions of state governments. *See Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971); *Perez v. Ledesma,* 401 U.S. 82, 91 S.Ct. 674, 27 L.Ed.2d 701 (1971); *In re Davis,* 691 F.2d 176 (3d Cir.1982). Bankruptcy laws are no exception, particularly where criminal proceedings are involved. *See Barnette v. Evans,* 673 F.2d 1250 (11th Cir.1982); *In re Wilson,* 30 B.R. 91 (Bankr.E.D.Tenn.1983); *In re Richardello,* 28 B.R. 344, 10 B.C.D. 743 (Bankr.D.Mass.1983). As the legislative history of Code § 362(b)(1) states,
>
> > The bankruptcy laws are not a haven for criminal offenders, but are designed to give relief from financial over-extension. Thus, criminal actions and proceedings may proceed in spite of bankruptcy.
>
> [Citations omitted.]
> With this congressional policy in mind, it would defy both logic and reason to allow a convicted person, who has been ordered to make restitution to his victim in lieu of incarceration, to use the Bankruptcy Code to escape the consequences of his crime.

*In re Pellegrino,* 42 B.R. 129, 134 (Bankr.D.Conn.1984).

Third, not only are *criminal penalties and fines not "debts"* as defined and applied under Section 101(11) of the Code,[3] they are obligations of a distinctly unique character and importance in the law. They are, after all, a primary tool used by the criminal system to punish, remedy, or rehabilitate illegal behavior. Criminal penalties serve to be part of, or as a substitute for, incarceration or similar criminal sanctions.

Summary and widespread discharge of criminal fines or penalties in bankruptcy court grossly interferes in and imperils the difficult and delicate task of state court judges in applying the right blend of available criminal sanctions. This peril has been recognized—and purposely avoided—by other bankruptcy courts:

> Having considered the pleadings, the relevant evidence, the arguments of counsel and congressional intent, this court of equity will not read the Bankruptcy Code as permitting Pellegrino to escape the consequences of her crime. Justice is the end result when the rule of law is interpreted with common sense, reason and simple fairness. Here a convicted felon and her husband, who wished to save her from incarceration, pleaded for lieniency [sic] in the state court. She was spared the penalty of incarceration on the condition that restitution would be made. The plaintiffs now come to this court to repudiate that obligation, claiming that the Bankruptcy Code provides that relief. It does not.... 'A thief cannot escape criminal sanctions by filing bankruptcy and listing his victim on his schedule of unsecured creditors.' The bankruptcy laws were not enacted and must not be interpreted to provide a refuge to criminals. The plaintiffs bargained in state court for Pellegrino's freedom. This court will not permit them to escape the full obligations of that bargain.

*In re Pellegrino, supra* at 138–139.

In the case at bar, the sentence and judgment of conviction reflected a decision by the state that its penal interests

---

**3.** "Bankruptcy Code § 101(11) provides that the word 'debt' means 'liability on a claim.' 'Claim' is defined in § 101(4) as a 'right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured.' " ... "Since a crime victim has no 'right to payment,' restitution is not a 'debt' under Bankruptcy Code § 101(11). *Accord, In re Johnson,* 32 B.R. 614 (Bankr.D.Col.1983) (applying Colorado law); *In re Magnifico,* 21 B.R. 800, 9 B.C.D. 670 (Bankr.D.Ariz.1982) (applying Arizona law); *In re Button,* 8 B.R. 692, 7 B.C.D. 307 (Bankr.W.D.N.Y.1981) (applying New York law)." *In re Pellegrino, supra* at 132.

would be best served by placing the Debtor on probation and *requiring him to* make full restitution to his victims. This means of rehabilitating the debtor and deterring similar conduct in the future was not the only option available to the sentencing court.... [T]he state opted for a lesser sentence to fulfill its goals of deterrence and rehabilitation. At the time the sentence was imposed, the state was unmindful of the effect a potential discharge in bankruptcy might have on its penalogical choice. If the commencement of bankruptcy and threat of discharge had loomed large as real and substantial possibility, the state might well have chosen a different sentencing option to serve its penal interest. It goes without saying that if the state had opted for incarceration in lieu of probation and restitution that the debtor's prison term would not be vacated by the subsequent discharge of the Projects Inc. civil liability. The result should not be different merely because the state chose a less restrictive means to further its penal goals. More to the point, a retroactive vacation of the state criminal restitution order would significantly compromise the state's penal decision in this case and potentially could discourage less restrictive sentencing options in the future.

*In re Vik, supra* at 68.

For these reasons and those set forth in *Johnson* and *Ferris*, this Court is convinced that duly assessed criminal fines and penalties, which are of a punitive, remedial, or rehabilitative nature, and not of a strictly compensatory nature, are *not debts* as defined in the Bankruptcy Code and are *not dischargeable* in Chapter 13.

IT IS THEREFORE ORDERED that the Debtors are granted a period of fifteen (15) days from the date of this Order to amend their Plan to adjust for this decision and account for the financial consequences of this Order of the Court, if they so desire. Failure to do so will result in a finding by this Court that the Plan does not satisfy the elements of 11 U.S.C. § 1325(a) in that it fails to account for, or otherwise provide for payment or other appropriate treatment

of, this debt which must be paid by the Debtor Cory David Norman.